**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LIFENG GUO,<br>Petitioner,<br>v.<br>THOMAS GILES, et al.,<br>Respondents. | Case No. 2:26-cv-12911-MBK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Lifeng Guo, a native and citizen of China, filed the instant habeas petition on November 3, 2026, on behalf of herself and her two minor children (S.Q., age 5, and T.Q., age 12). That day, Petitioners had been arrested by Immigration and Customs Enforcement ("ICE") officers after they appeared as instructed for a biometrics appointment with United States Citizenship and Immigration Services ("USCIS"), in connection with their applications for asylum.

At the time they filed their petition, the family was being held at an ICE holding facility in Los Angeles, California. Despite a court order prohibiting Respondents from transferring Petitioners outside the Central District of

California pending the resolution of the Petitioners' application for a temporary restraining order ("TRO"), ICE subsequently transferred Ms. Guo and her children to Texas. After the Court ordered Respondents to show cause ("OSC") why they should not be sanctioned for violating court orders, Respondents filed a response asserting the transfer was an unintentional error. Respondents represented they would promptly return the family to the Central District of California and release them on an order of recognizance.

On November 9, 2026, Petitioners filed a status report confirming that Respondents had returned Ms. Guo and her family to Los Angeles. However, Petitioners objected to the placement of an electronic ankle monitor on Ms. Guo and Respondents' retention of their passports. Respondents filed their response to the Petition on November 12, 2026. Respondents primarily argue that the Petition is now moot, given Petitioners' release from physical custody. Respondents also argue Petitioners had not presented any valid arguments why supervised release on Alternatives to Detention ("ATD") was improper. Petitioners filed their reply on November 13, 2026.

For the reasons that follow, the Court finds that Petitioners' claims are not moot, grants the Petition, and issues a writ of habeas corpus requiring Ms. Guo and her children be returned to the status and liberty conditions they enjoyed before their unlawful detention.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner Lifeng Guo is a native and citizen of China. Dkt. 1 at 2. She brings this habeas petition on behalf of herself and her two minor sons, T.Q. (age 12) and S.Q. (age 5) (collectively, "Petitioners"). *Id.* Petitioners first entered the United States on February 1, 2026, as B-2 visitors, with authorized stay through July 31, 2026. *Id.* at 7. Since April 2026, Petitioners

have resided in Walnut, California. *Id.* Ms. Guo's husband resides outside of the United States, and Ms. Guo is the sole caregiver of her children in this country. *Id.*

On June 16, 2026, Ms. Guo filed a Form I-578 (Application for Asylum and for Withholding of Removal) with USCIS, seeking protection under the Convention Against Torture ("CAT"). *Id.* Ms. Guo listed her Walnut address in the application. *Id.* Her children are included in that application as derivative beneficiaries. *Id.* USCIS acknowledged receipt of the application, which remains pending. *Id.* at 7-8. The asylum application seeks protection on grounds of religion and political opinion. *Id.* at 7. The application describes Ms. Guo's more than two decades of Christian ministry, the termination of her theological training in China by government interference, and her public participation in political demonstrations before the Consulate General of the People's Republic of China in Los Angeles. *Id.* at 8.

On June 19, 2026, USCIS directed Ms. Guo's eldest child, T.Q., to appear for a biometrics appointment at a USCIS office on July 10, 2026. *Id.* at 8. Ms. Guo and her younger child, S.Q., completed biometrics at the appointment, but not T.Q. *Id.* On October 15, 2026, USCIS issued further notice requiring T.Q. to appear and expressly warned that failure to appear may have immigration consequences. *Id.* USCIS set the appearance date for November 3, 2026. *Id.*

On November 3, 2026, Petitioners appeared as directed for the USCIS appointment at the assigned USCIS office in City of Industry, California. *Id.* At approximately 9:00 a.m., ICE arrested the family without notice. *Id.* At approximately 1:00 p.m. the same day, after being detained, Ms. Guo called her attorney with information that Respondents intended to transfer the family to Texas. *Id.* The initial Petition immediately followed the same day,

filed concurrently with a TRO application to prevent transfer. Dkt. 1, 3. Petitioners argued their detention without notice or a pre-deprivation hearing violated procedural due process, substantive due process, statutory authority, and the Suspension Clause. *Id.* at 12-18. Petitioners requested immediate release on the conditions to which they were subject before their detention and the return of any identity documents or property seized at the time of their arrest. *Id.* at 18.

Upon receipt of the Petition and TRO application, the Court ordered Respondents to file a response to the TRO application on or before November 4, 2026. Dkt. 7. The Court also ordered Respondents "not to transfer Petitioners outside the Central District of California, including for their removal, pending the resolution of Petitioners' application for a temporary restraining order." *Id.* Respondents failed to timely respond to the TRO application.

On November 5, 2026, Petitioners' counsel filed a notice stating that Respondents had transferred Petitioners to the Dilley Immigration Processing Center in Dilley, Texas, in violation of this Court's order. Dkt. 8. The transfer was also without the required two court days' notice as set out by General Order 26-05. Dkt. 6 at 2. The same day, the Court ordered Respondents to show cause by 3:00 p.m. that day explaining why they should not be sanctioned for violating court orders. Dkt. 10. The Court set a hearing on the OSC for 4 p.m. that day. *Id.* Respondents filed a response to the OSC that afternoon, before the hearing, and the Court subsequently vacated the hearing. Dkt. 11; Dkt. 12.

In their response to the OSC, Respondents alleged Petitioners were taken into custody around 2:00 p.m. on November 3, 2026, and scheduled for an early morning transfer to Texas the following day. *Id.* at 2. Petitioners filed

their petition at or around 3:26 p.m. on November 3, 2026. *Id.* The Notice of General Order 26-05 issued on or around 4:47 p.m. that day, with this Court's specific order on the TRO application (Dkt. 7) issuing shortly thereafter. *Id.* At or around 10:19 p.m. on November 3, 2026, Petitioners were transported to a hotel near Los Angeles International Airport. *Id.* Petitioners were transported to Dilley, Texas, in the early morning on November 4, 2026. *Id.* Respondents alleged the Notice of General Order was only transmitted to ICE after transport had been completed. *Id.*

Respondents also represented to the Court that they would arrange for the return of Petitioners to the Central District of California under supervised release on an order of recognizance. *Id.* This Court consequently issued an order requiring Respondents' counsel to communicate with Petitioners' counsel on the status of Petitioners' return and release on recognizance. Dkt. 12. This Court also instructed Petitioners' counsel to file a status report on or before November 9, 2026, to advise on the Petitioners' status and on whether there are any remaining issues for the Court to resolve. *Id.*

On November 9, 2026, Petitioners' counsel filed a status report stating Respondents had returned Ms. Guo and her family to Los Angeles, but conditioned their release on an electronic ankle monitor for Ms. Guo. Dkt. 14 at 1-2. Moreover, Respondents had not returned Ms. Guo's passport or her children's passports. *Id.* at 2. Petitioners asserted that release on those terms did not afford the relief the Petition requested. *Id.* The Court directed Respondents to address the status report in their response to the Petition, which was due on or before November 10, 2026, as set forth in General Order 26-05. Dkt. 15.

Respondents filed their response on November 12, 2026. Dkt. 16. They argue Petitioners' release on ATD moots the habeas petition. *Id.* at 2.

Moreover, they assert Petitioners have no due process right to a pre-detention hearing or immediate release from detention, given this was Petitioners' first detention. *Id.* at 2-3.

Petitioners filed their reply on November 13, 2026. Dkt. 17. They argue the Petition is not moot because they have not yet been afforded the relief requested. *Id.* at 3-5. Petitioners also argue they have a protected liberty interest and Respondents had not adequately addressed or contested that liberty interest. *Id.* at 5-8. Petitioners ultimately request removal of the ankle monitor, return of their passports, and a bar against their re-detention absent procedural protections. *Id.* at 10-11.

## II. DISCUSSION

Petitioners argue that they are entitled to release on the conditions to which they were subject before their detention because, *inter alia*, their arrest and detention violated due process. *See* Dkt. 1 at 18. While Petitioners have been released from physical detention, the release was conditioned on electronic surveillance and without return of Petitioners' passports. Dkt. 14. Petitioners argue this is inadequate relief for the harm suffered. *Id.* Respondents argue Petitioners have not stated a viable due process claim and have not otherwise presented a valid argument why they should not be on ATD. Dkt. 16 at 2-3. The Court first addresses Respondents' mootness argument, before turning to the merits of Petitioners' claims.

### A. The Petition is Not Moot

Respondents assert that "Petitioners requested their release from immigration custody" and therefore, because they are "no longer in immigration custody, there is no further relief this Court can provide." *Id.* at 2.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). However, "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC*, 568 U.S. at 91. "Given this concern, our cases have explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc.*, 528 U.S. at 190).

Here, Respondents voluntarily returned the Petitioners to the Central District and facilitated their release after the Petitioners filed this lawsuit. Respondents therefore have the burden to show that it is "absolutely clear" their allegedly unlawful conduct will not recur. They have not done so. Petitioners remain subject to supervision by immigration authorities pending their removal proceedings. *See* Dkt. 14. Respondents have already detained Petitioners once without the procedural protections they seek and have not disclaimed any intent to do so again in the future. Under these circumstances, the Court finds that Petitioners' claims are not moot.

In comparable cases, the Supreme Court and the Ninth Circuit have found habeas petitioners' claims remain live even after their court-ordered release. In *Nielsen v. Preap*, a plurality of the Supreme Court concluded that the plaintiffs' release on bond pursuant to a preliminary injunction did not

moot their detention claims. 586 U.S. 392, 403 (2019). It reasoned that "[u]nless that preliminary injunction was made permanent and was not disturbed on appeal, these individuals faced the threat of re-arrest and mandatory detention." *Id.*; *see also Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005) (holding that the petitioner's release "on a 1–year parole" did not moot his detention claims because his release was "not only limited to one year, but [also] subject to the Secretary's discretionary authority to terminate").

The Ninth Circuit has likewise found that a habeas petitioner's claims remain live even in a case where the petitioner was released at a bond hearing held pursuant to a preliminary injunction, the appellate court subsequently vacated the preliminary injunction, and the Government elected not to re-detain the petitioner in the intervening two years. *See Diouf v. Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011), *reversed on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022). Even in such circumstances, "[t]he voluntary cessation exception to mootness applies because—absent action by this court—the government could redetain Diouf, and deny him a bond hearing, at any time." *Id.*[1] *Accord Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (holding that the petitioner's release on an order of supervision did not moot his detention claims because he was subject to ICE's discretionary authority to revoke his release) (citing *Clark*, 543 U.S. at 376 n.3); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1195 n.2 (9th Cir. 2022) (holding that the "government's compliance with the district court's order" granting a habeas petition and requiring release of a petitioner "does not moot its appeal"). As in these cases, absent further relief, Petitioners could be re-detained by Respondents at any time without the procedural protections

[1] "'Vacated opinions remain persuasive, although not binding, authority.'" *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 717 n. 10 (9th Cir. 2023) (quoting *Spears v. Stewart*, 283 F.3d 992, 1017 n.16 (9th Cir. 2002) (en banc)).

they seek.

Additionally, Petitioners remain subject to supervision and Respondents have placed an ankle monitor on Ms. Guo. *See* Dkt. 14 at 1-2. The writ of habeas corpus is not limited exclusively to release from physical detention. *See Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973). Habeas remains an available remedy for those subject to "severe" restraints on liberty "not shared by the public generally." *Id.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). Here, Petitioner Guo's electronic ankle monitor is a severe restraint not generally shared by the public.

Accordingly, the Court rejects Respondents' argument that the Petition is moot.

**B. Petitioners' Initial Arrest and Detention Violated Due Process**

Respondents argue "Petitioner was not previously released from ICE custody on an order of supervision" and therefore "has no due process right to a pre-detention hearing." Dkt. 16 at 2. The Court disagrees.

This Court has previously found that, under the framework of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), noncitizens in circumstances comparable to Petitioner were entitled to release because their re-detention without a hearing or a material change in circumstances violated due process. *See, e.g.*, *Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026).

Courts have extended these principles to cases in which a noncitizen had not been released from immigration custody previously, but where the record indicates that the Government "deliberate[ly] acquiesce[d]" in the

noncitizen's remaining at liberty in the United States. *See Martinez v. Acting Warden of the Adelanto Detention Center*, No. 5:26-cv-02635-ACCV, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (holding that a visa overstayer with a pending asylum application "possesses a constitutionally protected liberty interest that the Government cannot extinguish without affording pre-deprivation process"); *Kharitonova v. Albarran*, No. 3:26-cv01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (concluding that noncitizen who overstayed nonimmigrant visa and entered removal proceedings, but was never detained, had a protected liberty interest in remaining free).

This case is analogous. Petitioners became subject to detention under 8 U.S.C. § 1226(a) after their B-2 visas expired. However, the Government elected not to detain them while their asylum claim remains pending. Dkt. 1 at 8. Petitioners have no arrests or convictions in this country and have resided at a fixed address known to the Government since at least June 19, 2026. *Id.* at 7-8. Yet the Government permitted them to remain at liberty, even after Petitioners had presented themselves for their first USCIS biometrics appointment on July 10, 2026. *Id.* at 8. Additionally, Petitioners' Form I-213 reflects DHS's determination that they do "not appear to be a flight risk and a threat to public safety." Dkt. 16-1 at 4. Under these circumstances, the Court finds that Petitioners' detention without a pre-deprivation hearing or a material change in circumstances violated due process.

Respondents also argue that Petitioners "do[] not present any valid arguments why they should not be on ATD." Dkt. 16 at 2. However, "the purpose of habeas remedies is to put the defendant back in the position he

would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up); *see also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.'" *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)). It follows that Petitioners should not be placed in a worse position because they were illegally arrested and detained.

Here, Petitioners had not been subject to an ankle monitor prior to their recent arrest but had nonetheless complied with their legal obligations, including reporting for biometrics appointments. Under these circumstances, the Court believes it appropriate to order a return to the "status quo" and prohibit Respondents from imposing conditions of supervision that did not exist before Petitioners' detention.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Lifeng Guo (A# 236-896-943) from her ankle monitor and other means of electronic surveillance, and return her and her children to the status and liberty conditions they enjoyed before their arrest and detention on November 3, 2026, including return of any and

all confiscated property or documents, such as passports; (3) Respondents are enjoined from re-detaining or imposing electronic surveillance and additional supervision requirements on Petitioner in the future without a hearing before a neutral decisionmaker where the Government must show such detention or additional restraints are warranted; and (4) Respondents shall file a status report within fourteen (14) days of the date of this order to confirm compliance with this order.

Dated: November 17, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE